# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NEW YORK

_____

VIRGINIA K. MILLER, *Individually and as*
*Administratrix of the Estate of Paul J. Miller*,

                          Plaintiff,

        -vs-

COUNTY OF MONROE, THE MONROE COUNTY
SHERIFF'S OFFICE, SHERIFF PATRICK M.
O'FLYNN, JOHN DOE NUMBERS 1 THROUGH
10, THE TOWN OF GREECE, THE TOWN OF
GREECE POLICE DEPARTMENT, OFFICER
SHAUN MOORE, OFFICER JOSEPTY HOPPER,
JOHN DOE NUMBERS 11 THROUGH 20,

                          Defendants.

DECISION & ORDER

11-CV-6219-CJS-JWF

_____

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | John R. Parrinello, Esq.<br>The Parrinello Law Firm, LLP<br>36 W. Main Street Suite 400<br>Rochester, NY 14614<br>(585) 454-2321 |
| For Defendants County of Monroe,<br>The Monroe County Sheriff's Office<br>and Sheriff Patrick M. O'Flynn: | Howard A. Stark, Esq.<br>Monroe County Department of Law<br>39 West Main Street Room 307<br>Rochester, NY 14614<br>(585) 753-1433 |
| For Defendants The Town of Greece,<br>The Town of Greece Police<br>Department, Officer Shaun Moore,<br>Officer Joseph Hopper and John Doe<br>Numbers 11 through 20: | David D. Spoto, Esq.<br>Gallo & Iacovangelo LLP<br>39 State Street Suite 700<br>Rochester, NY 14614<br>(585) 454-7145 |

## INTRODUCTION

**Siragusa, J.** This civil rights case, removed from New York State Supreme Court in the Seventh Judicial District, Monroe County civil index number 11-2984, is before the Court on a motion, filed on February 6, 2013, ECF No. 22, by defendants County of Monroe, The Monroe County Sheriff's Office, and Sheriff Patrick M. O'Flynn [1] (hereinafter collectively referred to as the County defendants). The County defendants seek an order pursuant to Federal Rule of Civil Procedure 12(c) awarding them judgment on the pleadings and dismissing Plaintiff's complaint against them. For the reasons stated below, the County Defendants' application is granted.

## FACTUAL BACKGROUND

This lawsuit arises from the December 20, 2010, death of Plaintiff's decedent at his home in Hilton, New York. According to the complaint, Paul Miller ("Miller") had been escorted to his home by Monroe County Sheriff's Deputies and/or Town of Greece Police Officers after his arrest for driving while intoxicated. Compl. ¶ 29. Once his handcuffs had been removed, Miller walked to his desk and "took possession of his legally registered handgun." *Id.* ¶ 30. One or more Sheriff's Deputies and/or Greece Police Officers present, "crouched and drew his [sic] weapon." *Id.* ¶ 31. The Complaint then spells out the ensuing acts, resulting in Miller's death:

---

[1] The Clerk's docket does not reflect that the County defendants' counsel, Mr. Stark, represents the John Doe 1 through 10 defendants, but in his Notice of Motion, at 2, Mr. Stark does argue that, "Defendants County of Monroe, Monroe County Sheriff's Office and Patrick O'Flynn do not have *respondeat superior* liability for the conduct of the defendants John Does 1-10 under New York State or federal law."

32. Upon information and belief, at that point Plaintiff's decedent informed the Defendant Monroe County Sheriff's Deputy(ies) and/or Town of Greece Police Officer(s) that the handgun was not meant for the law enforcement officer(s) or Plaintiff Virginia Miller.

33. Upon information and belief, at that point Plaintiff Virginia Miller began talking to her husband.…

\* \* \*

35. Upon information and belief, at that point Plaintiff Virginia Miller told one or more of the Defendant County Sheriff's Deputies and/or Town of Greece Police Officers that she was going to talk to her husband and Plaintiff Virginia Miller pulled free of the Deputy or Officer who was holding her arm and attempting to pull her out of the home.

36. Upon information and belief, at that point Plaintiff Virginia Miller was alone in the home with Plaintiff's decedent and one or more of the Defendant Monroe County Sheriff's Deputies and/or Town of Greece Police Officers was/were outside the door to the home, which was open, and Plaintiff Virginia Miller was talking to Plaintiff's decedent, asking him to give her the gun.

37. Upon information and belief, Plaintiff Virginia Miller stayed inside the home alone with Plaintiff's decedent for some time, talking to Plaintiff's decedent and both Plaintiff Virginia Miller and Plaintiff's decedent smoked a cigarette as they talked.

38. Upon information and belief, one or more of Defendant Monroe County Deputy Sheriffs and/or Town of Greece Police Officers, who was outside the home, repeatedly told Plaintiff Virginia Miller to come out of the house.

39. Upon information and belief, at all times Plaintiff's decedent had been pointing the handgun straight up at the ceiling and he did not point the handgun in any other direction.

40. Upon information and belief, one or more of Defendant Monroe County Sheriff's Deputy(ies) and/or Town of Greece Police Officer(s) grabbed Plaintiff Virginia Miller's arm and pulled her outside the home.…

\* \* \*

44. Upon information and belief, one or more Defendant Monroe County Sheriff's Deputies and/or Town of Greece Police Officers subsequently placed Plaintiff Virginia Miller, still handcuffed, in the back seat of a police car.

45. Upon information and belief, at the time Plaintiff Virginia Miller was placed in the back seat of the police car she could no longer see or speak to Plaintiff's decedent.…

\* \* \*

48. Upon information and belief, a Defendant Monroe County Sheriff's Deputy and/or Town of Greece Police Officer backed the police car into a neighbor's driveway.…

\* \* \*

52. Upon information and belief, from inside the police car, Plaintiff Virginia Miller saw several of Defendant Monroe County Sheriff's Deputies and/or Town of Greece Police Officers, and/or other Defendants, their agents, servants and/or employees, standing in a half-circle facing Plaintiff's decedent, with many floodlights turned on.

53. Upon information and belief, at that point, Plaintiff's decedent and the Defendant Monroe County Sheriff's Deputies and/or Town of Greece Police Officers and/or other Defendants, their agents, servants and/or employees, were standing in the street, approximately 30 to 40 feet from Plaintiff Virginia Miller.

54. Upon information and belief, at that point Plaintiff's decedent was still pointing the handgun straight up towards the sky, as he had been at all times.

55. Upon information and belief, in the early morning hours of December 20, 2010, Plaintiff Virginia Miller saw the Defendant Monroe County Sheriff's Deputies and/or Town of Greece Police Officers and/or other Defendants, their agents, servants and/or employees, shoot Plaintiff's decedent.

Compl. ¶¶ 32–55.

The County defendants contend that Plaintiff's complaint fails to make a valid *Monell* claim against them.[2] In that regard, the County defendants argue that they do not have *respondeat superior* liability for the conduct of John Doe Deputies under New York or Federal law.

Plaintiff's complaint contains fifteen causes of action. At issue here are the causes of action plead against the County defendants, consisting of the following:

> EIGHTH CAUSE OF ACTION—PLAINTIFF'S DECEDENT (Civil Rights Violation—Policy, Procedure, Standards, Custom, Etc. Re: Response to Emotionally Distraught Citizens…
>
> NINTH CAUSE OF ACTION—PLAINTIFF'S DECEDENT (Civil Rights Violation—Failure to Train and/or Supervise Re: Proper Response to Emotionally Distraught Citizens…)
>
> ELEVENTH CAUSE OF ACTION—PLAINTIFF VIRGINIA MILLER (Civil Rights Violations—Seizure, Deprivation of Liberty, Deprivation of Free Speech, Use of Excessive Force, without Probable Cause or Justification… [defendants] Involved in Seizing, Handcuffing and Restricting the Freedom of Movement and Speech of Plaintiff Virginia Miller…)
>
> TWELFTH CAUSE OF ACTION—PLAINTIFF VIRGINIA MILLER (Civil Rights Violation—Policy, Procedure, Standards, Custom, Etc. Re: Response to the Family Members of Emotionally Distraught Citizens…)
>
> THIRTEENTH CAUSE OF ACTION—PLAINTIFF VIRGINIA MILLER (Civil Rights Violation—Failure to Train and/or Supervise Re: Proper Response to the Family Members of Emotionally Distraught Citizens…)
>
> FOURTEENTH CAUSE OF ACTION—PLAINTIFF VIRGINIA MILLER (Assault and Battery…)
>
> FIFTEENTH CAUSE OF ACTION—PLAINTIFF VIRGINIA MILLER (False Arrest and Imprisonment)

Compl. at 28, 30, 34, 37 & 40.

---

[2] *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

**STANDARDS OF LAW**

Defendants have moved for judgment on the pleadings**,** and "[t]he same standard applicable to Fed. R. Civ. P. 12(b)(6) motions to dismiss applies to Fed. R. Civ. P. 12(c) motions for judgment on the pleadings**."** *Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 922 (2d Cir.2010) (citation omitted). Plaintiff's memorandum of law, at 3, relates the following:

> As noted in the accompanying affirmation, "[t]he district court should grant … a motion [to dismiss] only if, after viewing plaintiff's allegations in [a] favorable light, 'it appears **beyond doubt** that the plaintiff can prove **no set of facts** in support of his claim which would entitle him to relief.'" *Walker v City of New York*, 974 F2d 293, 298 (2nd Cir. 1992). [emphasis added]

Pl.'s Mem. of Law at 3–4, Mar. 6, 2013, ECF No. 26. The quoted language, "no set of facts," is from the Supreme Court's *Conley* decision, *Conley v. Gibson*, 355 U.S. 41 (1957). However, in 2007, the Supreme Court wrote:

> We could go on, but there is no need to pile up further citations to show that *Conley's* "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the *Conley* Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562–63 (2007). The Court, of course, must apply the current standard, which is well settled:

> Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

> plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp.*, 550 U.S. at 555; *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'") (*quoting Bell Atl. Corp. v. Twombly*) (footnote omitted). When applying this standard, a district court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party. *Burnette v. Carothers*, 192 F.3d 52, 56 (2d Cir.1999), *cert. den.* 531 U.S. 1052, 121 S. Ct. 657, 148 L. Ed. 2d 560 (2000).[3]

It is well settled that a plaintiff may establish a *Monell* claim in several ways. As an example, in *Simms v. City of New York*, 480 Fed. Appx. 627 (2d Cir. 2012), the Second Circuit wrote:

> A municipality may be held liable under § 1983 for its failure to train or adequately supervise its employees "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388, 109 S. Ct. 1197, 103 L. Ed. 2d 412 (1989). As described recently by the Supreme Court:
>
>> [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on

---

[3] During oral argument, counsel asked permission to brief the issue using the current standard and sent a letter brief to the Court by fax, ECF No. 30, on May 7, 2013. On May 13, 2013, Defendants also filed a letter memorandum, ECF No. 31. As further discussed below, the Court has considered both memoranda.

> actual or constructive notice that a particular omission in their
> training program causes city employees to violate citizens'
> constitutional rights, the city may be deemed deliberately
> indifferent if the policymakers choose to retain that program. . . .
> A pattern of similar constitutional violations by untrained
> employees is ordinarily necessary to demonstrate deliberate
> indifference for purposes of failure to train. . . . Without notice that
> a course of training is deficient in a particular respect,
> decisionmakers can hardly be said to have deliberately chosen a
> training program that will cause violations of constitutional rights.

> *Connick v. Thompson*, 131 S. Ct. 1350, 1360, 179 L. Ed. 2d 417 (2011)
> (internal citations and quotation marks omitted).

*Simms*, 480 Fed. Appx. at 629–30. It is equally clear that, "[l]iability of a municipal

defendant or an individual sued in his official capacity under § 1981 and § 1983 cannot,

however, be premised on a theory of respondeat superior." *Patterson v. County of*

*Oneida, N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004).

### ANALYSIS

The County defendants' argument is that (1) the County does not have

*respondeat superior* liability for the conduct of the John Doe Deputies under New York

law; (2) Sheriff O'Flynn does not have *respondeat superior* liability for the conduct of

the John Doe Deputies under New York law; (3) neither the County nor Sheriff O'Flynn

has *respondeat superior* liability for the conduct of the John Doe Deputies under

Federal law; (4) the complaint fails to state a claim under 42 U.S.C. § 1983 against the

County, or Sheriff O'Flynn, in his official capacity, due to its pleading deficiencies; and

(5) the complaint fails to state a claim under 42 U.S.C. § 1983 against the County, or

Sheriff O'Flynn, in his individual capacity, due to its pleading deficiencies.

### Sheriff O'Flynn and the Office of Monroe County Sheriff

The County defendants' contend that Plaintiff has incorrectly sued both the Sheriff and his office:

> A sheriff is a constitutional officer under the New York State Constitution. *N.Y. Constitution, Article 13, § 13.* The plaintiff's designation of the "Monroe County Sheriff's Office" as a party defendant is construed as a suit against the office of the Monroe County Sheriff. As correctly pled in the plaintiff's Complaint, the office of the Monroe County Sheriff was occupied by Monroe County Sheriff Patrick M. O'Flynn at the time of the events alleged therein. *Complaint, ¶ 5.* Consequently, the Monroe County Sheriff and Monroe County Sheriff Patrick M. O'Flynn will be treated as one and the same and referred to as *Sheriff O'Flynn.*

Def.s' Mem. of Law at 2. Plaintiff's memorandum in response to the County defendants' memorandum in support does not dispute this contention. Therefore, the Court will also treat Sheriff O'Flynn and his office as one and the same for the purposes of this motion.

### Respondeat Superior Liability (Fourteenth & Fifteenth Causes of Action)

The County defendants argue that Plaintiff's New York law causes of action against them for assault and battery in the Fourteenth Cause of Action and for false arrest and imprisonment in the Fifteenth Cause of Action, are foreclosed under New York law because the County does not have *respondeat superior* liability for the conduct of the John Doe Deputies. The Court agrees. In *Trisvan v. County of Monroe*, 26 A.D.3d 875 (N.Y. App. Div. 4th Dep't 2006), the New York State Appellate Division, Fourth Department, made clear that the theory of respondeat superior does not apply to the situations plead in the Fourteenth or Fifteenth causes of action against the County or Sheriff O'Flynn:

> "Because we conclude that the [County and Sheriff] cannot be held vicariously liable for the alleged negligence of the [deputies] . . . , we cannot say that the interest[s] of the [parties] 'in the subject-matter is such

that they stand or fall together and that judgment against one will similarly affect the other'" (*Mondello*, 80 NY2d at 226). With respect to the County, it is well established that "[a] county may not be held responsible for the negligent acts of the Sheriff and his deputies on the theory of *respondeat superior*, in the absence of a local law assuming such responsibility" (*Marashian v. City of Utica*, 214 AD2d 1034, 1034, 626 NYS2d 646 [1995]; *see Smelts v. Meloni* [appeal No. 3], 306 AD2d 872, 873, 762 NYS2d 467 [2003], *lv. denied* 100 NY2d 516, 801 NE2d 424, 769 NYS2d 203 [2003]; *Sarbou v Meloni*, 234 AD2d 991, 651 NYS2d 827 [1996]; *see also Barr v. County of Albany*, 50 NY2d 247, 255-257, 406 NE2d 481, 428 NYS2d 665 [1980]), and here there is no such local law (*see Smelts*, 306 AD2d at 873; *Sarbou*, 234 AD2d at 991; *Davis v. City of Rochester* [appeal No. 2], 138 AD2d 945, 526 NYS2d 409 [1988], *appeal dismissed* 72 NY2d 914, 529 NE2d 178, 532 NYS2d 848 [1988]). With respect to the Sheriff, it is also well established that "a Sheriff cannot be held personally liable for the acts or omissions of his deputies while performing criminal justice functions, and that . . . principle precludes vicarious liability for the torts of a deputy" (*Barr*, 50 NY2d at 257; *see Smelts*, 306 AD2d at 873-874; *Pulitano v. Nationwide Ins. Co.*, 193 AD2d 1055, 598 NYS2d 876 [1993]).

*Trisvan*, 26 A.D.3d at 876. Plaintiff's memorandum in opposition does not address the County defendants' argument on this point.

The County defendants make the same lack of *respondeat superior* liability with regard to Federal law, relying on *Monell*. There, the Supreme Court held that,

the language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.

*Monell*, 436 U.S. at 691. Again, Plaintiff has not addressed this argument by the County defendants in its responsive memorandum.

10

The Court concludes that the law is clear and dismisses, as to the County defendants, the Fourteenth and Fifteenth causes of action on both state law and federal law grounds.

### *Monell Liability under 42 U.S.C. § 1983*

Relying in part on the holding in *Bradley v. City of New York*, No. 08-CV-1106 (NGG), 2009 U.S. Dist. LEXIS 51532 (E.D.N.Y. Jun. 18, 2009), and *Triano v. Town of Harrison*, No. 09-CV-6319 (KMK), 2012 U.S. Dist. Lexis 141218 (S.D.N.Y. Sept. 26, 2012), the County defendants argue that in order to survive this Rule 12(c) motion, Plaintiff must allege more than a mere assertion that the County or Sheriff O'Flynn had a custom or policy under which Plaintiff's constitutional rights were violated. As the Southern District put it:

> [T]o survive a motion to dismiss, Plaintiff cannot merely allege the existence of a municipal policy or custom, but "must allege facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists." Santos, 847 F. Supp. 2d at 576 (citing *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993)). Put another way, mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details.

*Triano*, 2012 U.S. Dist. LEXIS 141218, *26.

In her responsive memorandum, however, Plaintiff, relying on the Second Circuit's holding in *Walker v City of New York*, 974 F.2d 293 (2d Cir. 1992), contends that in a pre-discovery motion to dismiss, the pleading here is sufficient. Plaintiff cites a case subsequent to *Walker*, in which the Second Circuit wrote that,

> *City of Canton* requires that plaintiffs establish not only that the officials' purported failure to train occurred under circumstances that could constitute deliberate indifference, but also that plaintiffs identify a specific

> deficiency in the city's training program and establish that that deficiency is "closely related to the ultimate injury," such that it "actually caused" the constitutional deprivation. *City of Canton*, 489 U.S. at 391….
>
> Our holding in *Walker v. City of New York* is not to the contrary. There, after delineating the showing necessary to establish that a city's failure to train is the result of deliberate indifference, we held that the plaintiff should have an opportunity to prove, after discovery, that the city had failed to train its assistant district attorneys and police officers, and that the need for better training was so obvious that the failure to train would amount to deliberate indifference. *Walker*, 974 F.2d at 300. *Because the district court had dismissed Walker's case at the motion to dismiss stage, rather than on summary judgment, we did not require him to identify a specific deficiency in the district attorney's training program or to establish a causal link between the lack of training and the misconduct.* It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage, and therefore need only plead that the city's failure to train caused the constitutional violation. After discovery, on the other hand, a plaintiff is expected to proffer evidence from which a reasonable factfinder could conclude that the training program was actually inadequate, and that the inadequacy was closely related to the violation. *See Brown*, 520 U.S. at 409 (stating that City of Canton required plaintiffs to show "that a municipality has failed to train its employees" in addition to establishing that the failure to train could constitute deliberate indifference).

*Amnesty Am.*, 361 F.3d at 129 & 130 n.10. Consequently, Plaintiff argues that since the present motion was brought by the County defendants prior to discovery, Plaintiff should be held to the pleading standard outlined in *Amnesty America*, which explained the Second Circuit's holding in *Walker*.

In their reply memorandum, filed March 18, 2013, ECF No. 27-2, the County defendants rebut Plaintiff's argument, contending that *Iqbal* and *Twombly* articulate the pleading standard, not *Amnesty America* and *Walker*. They argue that footnote ten in *Amnesty America*, quoted above, is *dicta* since the *Amnesty* case involved a motion for summary judgment, not a motion for judgment on the pleadings, or a motion to dismiss.

The County defendants quote the following language from *Simms v. City of New York*, 480 Fed. Appx. 627 (2d Cir. 2012):

> Simms argues that the mere conclusory allegation that the City failed to train its officers, without any supporting factual material, is sufficient to state a plausible claim for municipal liability under § 1983. While it may be true that § 1983 plaintiffs cannot be expected to know the details of a municipality's training programs prior to discovery, *see Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 130 n.10 (2d Cir. 2004) ("It is unlikely that a plaintiff would have information about the city's training programs or about the cause of the misconduct at the pleading stage."), this does not relieve them of their obligation under *Iqbal* to plead a facially plausible claim. There are a number of ways that plaintiffs can plausibly allege a § 1983 claim for municipal liability premised on a failure to train theory without having detailed knowledge of a municipality's training programs. For example, plaintiffs can meet their pleading obligations in this respect by alleging facts indicating "[a] pattern of similar constitutional violations by untrained [municipal] employees," *Connick*, 131 S. Ct. at 1360. No such facts are alleged here.

*Simms*, 480 Fed. Appx. at 631 n.4. The County defendants also cite to *Jovanovic v. City of New York*, No. 04 civ. 8437 (PAC), 2006 U.S. Dist. LEXIS 59165 (S.D.N.Y. Aug. 17, 2006), as "a prime example of how a plaintiff can satisfy its failure to train and supervise pleading obligations under *Iqbal* and *Twombly* to defeat a Rule 12(b)(6) or 12(c) motion…." Def.s' Reply Mem. at 4.

Plaintiff's complaint contains allegations that allege the County defendants failed to properly train and supervise the sheriff's deputies who may have been involved in Miller's death. As an example, the following two paragraphs are taken from the Eighth and Ninth causes of action:

> 120. Upon information and belief, on December 20, 2010, Defendants County of Monroe, Monroe County Sheriff's Department and/or Monroe County Sheriff Patrick O'Flynn *did not have in place proper and appropriate policies, procedures, standards and/or permanent customs*

13

*and/or usage for dealing with emotionally distraught citizens who do not threaten harm to others*, policies which take into consideration of the nature of the conduct and/or the psychological condition of the citizen involved, as well as the Constitutional rights of life, liberty and due process of law afforded to the citizen, and which aim to minimize the danger to the physical safety of the emotionally distraught citizen.…

126. Upon information and belief, on December 20, 2010, Defendants County of Monroe, Monroe County Sheriff's Office, and/or Monroe County Sheriff Patrick O'Flynn *had not properly trained* Defendants Monroe County Sheriff's Deputies John Does 1 through 10 to deal appropriately with emotionally distraught citizens who do not threaten harm to others, in a manner which takes into consideration of the nature of the conduct and/or the psychological condition of the citizen involved, as well as the Constitutional rights of life, liberty and due process of law afforded to the citizen, and which aims to minimize the danger to the physical safety of the emotionally distraught citizen.

Compl. ¶¶ 120, 126 (emphasis added). These paragraphs of the complaint contain no factual allegations sufficient to raise a right to relief above the speculative level. Unlike the suggestion of the Supreme Court in *Connick*, 131 S. Ct. at 1360, and in *Simms*, 480 Fed. Appx. at 631 n.4, Plaintiff here has not plead a "pattern of similar constitutional violations by untrained employees" to raise his allegations above mere speculation. Despite the fact that this is a pre-discovery motion for judgment on the pleadings, the case law from the Second Circuit makes it clear that Plaintiff must allege more than the conclusion that since Miller was killed, the County defendants must have failed to properly train the sheriff's deputies involved, or that they had a policy or practice in place that led to Miller's unconstitutional death at the hand of deputy sheriffs.

In her letter memorandum of May 7, 2013, ECF. No. 30, Plaintiff analyzes arguments in light of *Twombley* and *Iqbal* instead of *Conley*. She maintains that the Supreme Court emphasized in *Leatherman v. Tarrant County*, 507 U.S. 163 (1993),

14

that *Twombley* and *Iqbal* were not meant to create a heightened pleading standard. Pl.'s Ltr. Mem. of Law at 2. However, as one district court has observed, "[t]he difficulty in following *Leatherman* is that its holding appears to be significantly undermined by *Iqbal*, yet *Leatherman* is not cited in either the majority or dissenting opinions of *Iqbal*." *Morris v. Phila. Hous. Auth.*, No. 10-5431, 2011 U.S. Dist. LEXIS 46465, *7 (E.D. Pa. Apr. 28, 2011). Moreover, the Supreme Court's concern in *Leatherman* was that the district court there applied a heightened pleading standard required by case law in the Fifth Circuit. *Leatherman*, 507 U.S. at 165. *Leatherman* relied on the *Conley* standard, *id.* at 168, which the Supreme Court has since retired. Consequently, although the Court agrees that the law does not require a heightened standard of pleading for a *Monell* claim, the pleading must still meet the "plausibility" standard set out in *Twombley* and *Iqbal*.

In that regard, in her letter memorandum, Plaintiff also contends that her pleading does meet the plausibility standard set out in in *Twombley* and *Iqbal*. She argues:

> [I]t is "plausible" that (1) any policy in place for the handling of distraught, suicidal citizens and their families was inadequate with respect to the protection of such citizens' and family members' constitutional rights, or (2) there was no policy at all in place that was designed to protect such citizen's and family members' constitutional rights.

Pl.'s Ltr. Mem. of Law at 3. However, in *Walker*, the Second Circuit reviewed several Supreme Court cases and offered the following guidance with respect to a *Monell* failure to train claim:

First, the plaintiff must show that a policymaker knows "to a moral certainty" that her employees will confront a given situation. *Id.*[4] Thus, a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events.

Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation. Whether to use deadly force in apprehending a fleeing suspect qualifies as a "difficult choice" because more than the application of common sense is required. Instead, police officers must adhere to the rule of *Tennessee v. Garner,* 471 U.S. 1, 105 S. Ct. 1694, 85 L.Ed.2d 1 (1985), that deadly force may constitutionally be applied to a fleeing suspect only when "the suspect threatens the officer with a weapon or there is probable cause to believe that he has committed a crime involving the infliction or threatened infliction of serious physical harm" and when, "where possible, some warning has been given." *Id.* at 11-12, 105 S. Ct. at 1701. A choice might also be difficult where, although the proper course is clear, the employee has powerful incentives to make the wrong choice.

Finally, the plaintiff must show that the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights. *City of Canton,* 489 U.S. at 390, 109 S. Ct. at 1205. Thus, municipal policymakers may appropriately concentrate training and supervision resources on those situations where employee misconduct is likely to deprive citizens of constitutional rights.

Where the plaintiff establishes all three elements, then we think it can be said with confidence that the policymaker should have known that inadequate training or supervision was "so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Id.*

*Walker*, 974 F.2d at 297–98. Plaintiff maintains that because of an inadequate policy, a lack of a policy, or poor training, "[c]alm dialogue quickly turned to a fatal confrontation, solely because of the defendants' actions and omissions." Pl.'s Ltr. Mem. of Law at 3. She further argues:

---

[4] Citing *City of Canton v. Harris*, 489 U.S. 378, 390 n.10 (1989).

> In light of the facts, experience and common sense, it is "plausible" to conclude defendants were not properly trained and/or supervised in the handling of distraught, suicidal citizens and their families, and that, had they been property trained and/or supervised, the situation would not have been allowed to escalate from calm dialogue to violent death (the ultimate "civil rights" deprivation).

*Id*. The difficulty with accepting Plaintiff's arguments, though, is that she relies on the conclusion that this one incident plausibly infers either an inadequate policy, or training, or the complete lack of a policy. In *City of Oklahoma City v. Tuttle*, 471 U.S. 808 (1985), the Supreme Court faced a similar issue in a *Monell* claim based on a shooting. There the Court wrote:

> The trial court stated that the jury could "infer," from "a single, unusually excessive use of force ... that it was attributable to inadequate training or supervision amounting to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge." App. 44.

> We think this inference unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policymakers. But more importantly, the inference allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policymaker.

*Id*. at 821. The Court recognizes that *Tuttle* was not at the pleading stage, as this case is. Nevertheless, Plaintiff here is asking the Court to infer from one incident that the municipality's policy for handling suicidal individuals was inadequate, or that it completely lacked a policy. The Court finds that she had not alleged facts tending to support, at least circumstantially, an inference that such a municipal policy or custom exists, or that Defendants lacked a policy, or that Defendants inadequately trained its officers. Therefore, the Eighth, Ninth, Eleventh and Thirteenth causes of action against the County defendants must be dismissed.

**CONCLUSION**

For the reasons stated above, the County Defendants' application for a judgment on the pleadings pursuant to Rule 12(c), ECF No. 22, is granted. The Clerk shall enter judgment for defendants County of Monroe, The Monroe County Sheriff's Office, and Sheriff Patrick M. O'Flynn. The John Doe defendants identified simply as deputies or employees of the Monroe County Sheriff's Office are terminated from this lawsuit. The case continues against the remaining defendants.

IT IS SO ORDERED.

Dated:   May 17, 2013
             Rochester, New York

ENTER:


/s/ Charles J. Siragusa__
CHARLES J. SIRAGUSA
United States District Judge

18